IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| D. WILSON CONSTRUCTION | § | |
| COMPANY, for itself and as fiduciary | § | |
| of the D. WILSON CONSTRUCTION | § | |
| COMPANY EMPLOYEE STOCK | § | |
| OWNERSHIP PLAN, | § | |
| | § | CIVIL ACTION NO. |
| V. | § | 7:20-CV-00348 |
| | § | |
| THE MENKE GROUP D/B/A | § | |
| MENKE & ASSOCIATES, INC. AND | § | |
| BSI CONSULTANTS | § | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff, D. Wilson Construction Company, for itself and as fiduciary of the D. Wilson Construction Company Employee Stock Ownership Plan, files this Complaint seeking damages from Defendant The Menke Group d/b/a Menke & Associates, Inc. and/or BSI Consultants arising out of breach of contract and professional negligence and would respectfully show the Court as follows:

### I.   PARTIES

1.      Plaintiff D. Wilson Construction Company ("D. Wilson") is a Texas corporation with its principal place of business in the Southern District of Texas.

2.      All of the ownership of D. Wilson is held and owned by the D. Wilson Construction Company Employee Stock Ownership Plan (the "Plan"), which is an employee stock ownership plan and an ERISA retirement plan ("ESOP"). The Plan

was established to invest in stock of D. Wilson and to provide a means for employees of D. Wilson to share in the value of D. Wilson.

3.      Since the Plan's inception D. Wilson was and currently is the Plan Administrator of the Plan and a named fiduciary of the Plan.

4.      The Plan resides in and is administered within the State of Texas and the geographical boundaries of the United States District Court for the Southern District of Texas.

5.      Defendant The Menke Group, Inc. doing business as Menke & Associates, Inc. and/or BSI Consultants ("Menke") is a corporation organized and existing under the laws of the State of California. Menke can be served with process by serving its statutory agent for service of process, the Texas Secretary of State, at the Office of the Secretary of State, Statutory Documents Section – Citations Unit, 1019 Brazos Street, Austin, Texas 78701, who shall then forward the process to Menke's designated agent for service of process John Menke, One Kaiser Plaza, Suite 505, Oakland, California 94612.

6.      Menke has acted as a fiduciary of the Plan since the Plan's inception.

## II.   JURISDICTION & VENUE

7.      This is an action for damages resulting from Menke's breach of contract and professional negligence. This is also an action under ERISA §§ 502(a)(2) and 502(a)(3) to redress a loss of plan assets and recover plan assets as a result of Menke's failure to act in conformity with the standard of care under ERISA § 404(a), and its

breach of fiduciary duty pursuant to ERISA § 409(a). This Court has jurisdiction over the ERISA claims under ERISA § 502(e)(1).

8.      D. Wilson is incorporated in and has its principal place of business in Texas. Menke is incorporated in and has its principal place of business in California. This Court has jurisdiction over D. Wilson's claims under state law pursuant to 28 U.S.C. § 1332 because there is complete diversity of parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9.      Menke is subject to personal jurisdiction in the State of Texas, and in the Southern District, because it consented to jurisdiction by purposefully soliciting and conducting business in McAllen, Texas. D. Wilson's causes of action asserted in this lawsuit arise from or are connected with purposeful acts committed by Menke in Texas as a professional service provider for D. Wilson, a Texas citizen.

10.      Venue is proper in the Southern District of Texas under 28 U.S.C. § 1392(a) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Venue is proper in this Court for D. Wilson's ERISA claims under ERISA § 502(e)(2).

### III.   FACTUAL BACKGROUND

11.      D. Wilson is a regional construction company serving clients throughout South and Central Texas. In 2000, after more than 40 years as a successful family-owned business, owners Bill and Mike Wilson decided to transfer the ownership of the company to its employees. It was decided that D. Wilson would sponsor and

maintain the Plan as the vehicle for sharing the value of D. Wilson with its employees and to help employees secure their retirement.

12.     Through the Plan, employees earn a right to beneficial ownership in shares of stock of D. Wilson and also accumulate benefits for their retirement. Employees essentially became owner-employees of D. Wilson. This transfer of ownership takes place over a long period of time based on numerous factors, including each employee's pay and length of employment. Accurate, timely, and reliable recordkeeping systems are essential to the correct functioning of this transfer.

13.     Menke holds itself out to be a leading nationwide ESOP services provider. Menke markets and holds itself out to be the premier specialists in ESOP services, offering consulting, legal review, accounting, and recordkeeping services to customers throughout the United States. D. Wilson hired Menke to create D. Wilson's ESOP, draft documents and policies, and provide professional and administrative services.

14.     In 2000, D. Wilson entered into a contract with Menke for recordkeeping, administrative, and consulting services for the ESOP. The contract term was for one year and was renewed each year from 2000 to 2019.

15.     Under the services contracts, Menke was to provide accounting, reporting, and participant communication services for D. Wilson. Specifically, Menke's accounting obligations included ensuring the following were properly carried out:

      a.   Determination and verification of employee eligibility;

      b.   Allocation of contributions by D. Wilson;

c.  Allocation of forfeitures;

d.  Allocation of stock sales and/or purchases among employee accounts;

e.  Allocation of stock value growth and investment earnings amounts among employee accounts;

f.  Allocation of leveraged stock releases among employee accounts;

g.  Undertaking stock transactions and reallocation upon employee separation from employment;

h.  Posting of payments and withdrawals;

i.  Calculation and maintenance of individual vesting percentages;

j.  Maintenance of cost basis of stock;

k.  Maintenance of employment history;

l.  Maintenance of diversifiable shares;

m.  Tracking of special share characteristics; and

n.  Compliance testing and correction.

16.    D. Wilson relied on Menke to properly perform these functions as professionals specializing in these exact types of ESOP services and to uphold the standard of care described under ERISA § 404(a). D. Wilson relied on Menke to comply with terms of the Plan and to uphold its professional standard of care with regard to the above described services, particularly in the area of allocations of contributions, stock, earnings, forfeitures, and Subchapter S corporation dividends. Specifically, D. Wilson relied on Menke's expertise to determine the timing of forfeitures of stock upon participant separation from employment and, consequentially, the earnings that a participant would be credited after separation

from employment. Menke, however, strayed from the Plan terms and changed allocation formulas and vesting credit calculations.

17.    Since at least 2005, for each year of Plan operation, Menke failed to properly perform these services and failed to keep accurate owner-employee accounting records and also failed to act with the standard of care required of fiduciaries by ERISA.

18.    Menke's errors were significant and widespread, affecting every single owner-employee. Because D. Wilson's ESOP is a "closed system," Menke's failures resulted in both the overallocation and underallocation of company stock and sums being deposited in owner-employee accounts from 2005 to 2019.

19.    Menke made the following administrative and accounting errors :

*a. Calculating Compensation*

Menke used the wrong numbers for employee "compensation," and certain components of pay were then counted twice. As a result, the proper amount of owner-employee compensation was required to be recalculated and contributions by D. Wilson reallocated in order to correct Menke's errors.

*b. Determining Eligibility*

Menke incorrectly applied the "eligibility," "plan entry date," and years of service crediting rules of the ESOP, resulting in eligible employees being denied the right to enroll at the right times and not being credited with allocations in certain years. Accounts for employees whose admission to the ESOP were delayed are required to be corrected so that they are treated as eligible at the appropriate time.

As a result, contributions by D. Wilson were required to be reallocated for both the impacted owner-employees and all other owner-employees during the affected years.

### c. *Maintaining Vesting Percentages*

Menke incorrectly computed vesting for certain owner-employees by miscounting years of employment and/or using the incorrect vesting schedule. As a result, sums of money paid from the Plan to owner-employees who no longer work for D. Wilson and forfeiture allocations for all other owner-employees were calculated incorrectly.

### d. *Allocating Earnings and Forfeitures*

Menke did not follow a consistent schedule for the timing of transfers from "Company Stock Account" to the "Undistributed Account" within the Plan after an employee's employment ended or allocatig any earnings to participants in the year of transfer. As a result, earnings allocations and forfeitures were miscalculated.

20.    Menke's errors first came to light on or around November 22, 2019, when a Menke representative contacted Tim Mickunas, D. Wilson's Chief Financial Officer, to inform him that there were some errors in the Plan administration.

21.    The parties exchanged e-mails and telephone calls throughout late November and early December of 2019 regarding the administration errors. On December 17, 2019, a Menke employee represented to D. Wilson via e-mail that the total correction required by Menke's errors amounted to $98,461.71, due to incorrect vesting calculations for only two owner-employees. This was a misrepresentation by Menke that vastly understated the scope of Menke's errors and the damages flowing from them.

22.    As D. Wilson continued to inquire as to the scope of Menke's errors and D. Wilson's damages, the parties conducted a telephone call on December 23, 2019, to discuss the corrections needed to correct the ownership of D. Wilson by its employees through the Plan. On that call, Menke's President, John Menke, represented to D. Wilson that Menke would pay for any necessary correction. Menke has yet to reimburse D. Wilson for the significant damages flowing from Menke's errors.

23.    Later that same day, on December 23, 2019, Menke increased its self-appraisal of the scope of its errors. Specifically, a Menke employee represented to D. Wilson that the total correction due to the Plan was now $153,172.53. As it turns out, and as set forth below, this estimate was a tiny fraction of the actual damages to D. Wilson and the Plan resulting from Menke's errors.

24.    Although D. Wilson still hoped that the damages were limited, D. Wilson was beginning to lack confidence in Menke's ability to self-appraise the scope of its errors. On December 24, 2019, Mickunas e-mailed John Menke to express this lack of confidence in Menke's calculations.

25.    Following that e-mail, a Menke representative texted D. Wilson's Chief Executive Officer, Bill Wilson, later on December 24, 2019, to notify D. Wilson that a Menke team would be meeting the following Thursday to conduct a "full and complete analysis of the defects and corrections."  This was an implicit admission by Menke that its previous calculations and representations to D. Wilson were not based upon a full and complete analysis of the defects caused by Menke's errors. On information

and belief, these misrepresentations were made with the intent to understate and conceal the severity of Menke's errors and hold D. Wilson "at bay."

26.     Menke never provided D. Wilson with any full and complete analysis, so D. Wilson retained counsel and began to conduct its own analysis of the extent of Menke's errors.

27.     During the months-long investigation and correction process, D. Wilson discovered the all-encompassing extent of Menke's errors. As a result of its investigation, D. Wilson made a filing with the Internal Revenue Service on August 24, 2020, regarding Menke's errors. The filing, made under the Voluntary Correction Program of the Employee Plans Compliance Resolution System (the "VCP Filing"), included a description of Menke's errors, as well as the actions that D. Wilson would take to correct Menke's errors.

28.     In general and as explained in greater detail below, the VCP Filing summarized the impact of all of the errors made by Menke to all of the owner-employees during the period from 2005 to 2019. The errors were netted for each owner-employee with the result that two groups of owner-employees were identified—namely, a group of owner-employees who had been overallocated, and in some cases overpaid, as a result of Menke's errors and a group that had been underallocated, and in some cases underpaid, as a result of Menke's errors.

29.     D. Wilson determined that it would not make "negative" adjustments to owner-employees who received overallocations and/or overpayments. These negative adjustments would cause irreparable damage to D. Wilson in harm to morale among

employees; lack of credibility and trust in D. Wilson management; may be barred in some cases by limitations, laches, or other defenses; and, in many cases, may not be correctable under applicable Federal law anti-cut back rules that are protective of amounts that have already been earned or accrued. These amounts are, however, amounts that were improperly paid and that diminished the value of D. Wilson and represent a component of D. Wilson's damages.

30.    In the VCP Filing, D. Wilson's counsel identified multiple defects caused by Menke dating back to the D. Wilson's and the Plan's fiscal year ending September 30, 2005. A single error by Menke in the administration of one part of any owner-employee's allocation renders erroneous all allocations to all owner-employees in that year, which then carries forward to each following year. This compounding effect of any single error was then multiplied many times over because Menke made multiple errors in the administration of multiple allocations for multiple owner-employees.

31.    The cumulative effect of Menke's numerous errors over fourteen separate years, and Menke's failure to notice or correct these errors over that same time period, was enormous in scope, as set forth below.

32.    As a result of Menke's undiscovered and/or concealed errors over fourteen years, and Menke's repeated failures to correct the errors, the accounts of certain owner-employees were underfunded by $1,375,821.87. D. Wilson has suffered damages because it made a corrective payment to the Plan in this amount. Additionally, owner-employees who were separated from employment were underpaid $93,467.32 in payments and, as a result, suffered lost investment earnings

in the amount of $15,632.82. Finally, owner-employees were underpaid pre-retirement payments in the amount of $523,580.98, including lost investment earnings of $88,831.64. Because D. Wilson is obligated to correct these additional underpayments, this results in further damages to D. Wilson.

33.     Moreover, as stated previously, Menke's errors resulted in certain owner-employees' accounts being overfunded in the amount of $1,569,419.93. These overallocations represent funds that should not have been paid and cannot now be recouped, after years of D. Wilson's valued employees relying on the defective allocations and statements produced by Menke. Worse yet, additional allocations are simply gone from the Plan. Menke's errors resulted in overpayment of owner-employees who separated from employment in the amount of $208,404.61. Further, certain owner-employees were overpaid $287,723.73 in pre-retirement payments.

## IV.   CAUSES OF ACTION

34.     All conditions precedent to D. Wilson's recovery have occurred or have been waived, excused, or otherwise satisfied. All required notices have been given, or the right to receive notice has been waived or excused.

## Count I – Breach of Contract

35.     Starting in 2000, D. Wilson entered into a valid and enforceable contract with Menke for ESOP administration and recordkeeping services supported by valuable consideration. The contract has been renewed for one-year terms on September 30 of each year since 2000, including September 30, 2019. Under the annual contracts, Menke was responsible for the administration of D. Wilson's ESOP.

36.     D. Wilson has performed its obligations under the parties' contracts, but Menke failed to perform its obligations under the contracts. Menke improperly administered the Plan in breach of the contracts, causing D. Wilson to suffer actual damages in the form of both overallocations and overpayments, as well as underallocations and underpayments.

## Count II – Professional Negligence

37.     Menke provided professional services to D. Wilson. Menke had a duty to maintain professional standards of care in providing these services to D. Wilson. Menke, its employees, or other entities or persons for whose acts or omissions Menke may be vicariously liable breached the duty of care, causing D. Wilson's injuries. Menke is liable to D. Wilson for its injuries. D. Wilson seeks recovery of all remedies to which it is entitled, including actual damages, out-of-pocket expenses, consequential damages, attorney's fees, pre- and post-judgment interest, and court costs.

38.     The injury D. Wilson suffered as a result of Menke's negligence was inherently undiscoverable and objectively verifiable. D. Wilson did not know, or have reason to know, of Menke's negligence until November 22, 2019.

## Count III – Claim to Redress Breach of Fiduciary Duty and to Return Plan Assets to the Plan, ERISA §§ 502(a)(2), (3) and 409(a)

39.     In its capacity as a named fiduciary, D. Wilson has standing to sue Menke, a co-fiduciary, to recover to the Plan the Plan assets that were lost due to overfunding of Plan Benefits and overpayments made by the Plan to participants as

a result of Menke's breach of fiduciary duty. *See* ERISA § 502(a)(2) (29 U.S.C. §1132(a)(2)).

40.    As a named fiduciary, D. Wilson has standing to sue Menke, a co-fiduciary, to enforce the Plan's provisions and redress violations of the Plan's terms. *See* ERISA § 502(a)(3) (20 U.S.C. § 1132(a)(3)).

41.    Menke was, at all times relevant to this litigation a fiduciary of the Plan as, Menke exercised discretion, at times even at odds with the Plan terms, with respect to: (i) the method of allocations of employer contributions, earnings, dividends and forfeitures; (ii) the crediting of vesting and the timing of forfeitures of unvested amounts; (iii) the calculation of "Covered Compensation" used in allocation formulas; (iv) the timing of conversion of stock to cash assets upon Plan participant separation from employment; and (v) the crediting of earnings in the year of transition from the Plan stock and other investment accounts to the segregated investment or "Other" investment account. *See* ERISA § 3(9) (29 U.S.C. § 1002(9)).

42.    As a Plan fiduciary, Menke had, at all times relevant to this litigation, the duty to discharge its duties solely in the interest of the participants and beneficiaries of the Plan and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matter would use in the conduct of an enterprise of a like character with like aims."  ERISA § 404(a)(1)(A)–(B) (29 U.S.C. § 1104 (a)(1)(A)–(B)).

43.     Menke breached this standard of care, not only by exercising its discretion and ignoring Plan terms as described herein, but also by failing to recognize its own errors in judgment and discretion for fifteen (15) years.

44.     Menke is liable for its many breaches of fiduciary duty and is required to restore to the Plan its losses and lost assets arising from Menke's breaches and overfunding of participant Plan benefits. *See* ERISA § 409(a) (29 U.S.C. § 1109(a)).

45.     As a result of its breaches of fiduciary duty spanning fifteen (15) years, Menke is liable to the Plan for $1,569,419.93 in overpayments to participant accounts within the Plan; $208,404.61 in overpayments of post-separation distributions; and $287,723.73 in overpayments of "in-service" diversification distributions.

## ACCRUAL OF CLAIMS AND TOLLING OF LIMITATIONS

46.     D. Wilson did not discover that Menke had engaged in the negligent actions, breaches of fiduciary duty, or breach of the parties' agreement set forth above until November 22, 2019, at the earliest. Nor should D. Wilson have discovered such acts or practices prior to that time. Menke's negligence and breaches related to a variety of complex accounting issues that were well beyond the knowledge and understanding of D. Wilson. For that reason, D. Wilson justifiably relied on the advice and alleged expertise of Menke, which represents itself to be an "expert" in ESOPs.

47.     In addition, Menke failed to disclose to D. Wilson, made misrepresentations, or remained silent regarding the following material facts:

    a. That Menke failed to follow the governing documents as to the correct
       meaning of owner-employee compensation;

    b. That Menke failed to follow the governing documents as to eligibility;

c. That Menke failed to follow the governing documents as to determination of vesting;

d. That Menke failed to credit vesting due to mistakes in measuring employment;

e. That Menke failed to administer the correct vesting schedule;

f. That Menke failed to correctly administer forfeitures of unvested amounts;

g. That Menke failed to follow the governing documents as to transfers to the "Undistributed Account";

h. That Menke failed to follow the governing documents as to purchases of D. Wilson stock;

i. That Menke failed to follow the governing documents as to pre-retirement payments; and

j. That Menke failed to correctly apply compliance tests.

48.     Menke also fraudulently concealed its wrongdoing from D. Wilson. Despite having actual knowledge that it had acted negligently and breached the parties' agreement, Menke made misrepresentations and remained silent when it had a contractual and fiduciary duty to disclose its wrongdoing to D. Wilson. Menke made or caused to be made specific misrepresentations to D. Wilson, including but not limited to the following:

a. That the errors and omissions of Menke resulted in an error of only $98,461.71 for incorrect vesting calculations for only two owner-employees;

b. That Menke would reimburse D. Wilson for any necessary correction;

c. That the total cost of correction was only $153,172.53; and

d. That Menke would conduct a full and complete analysis of the defects and corrections.

49.     Menke had a fixed purpose to conceal its wrongdoing. D. Wilson, moreover, reasonably relied on Menke's misrepresentations and/or silence to D. Wilson's detriment.

## V.   ATTORNEY'S FEES

50.     As a result of Menke's breaches of its contracts with D. Wilson, D. Wilson was required to retain the legal services of the law firm Cokinos | Young. D. Wilson has agreed to pay Cokinos | Young a reasonable fee for its services necessarily rendered and to be rendered in this action.

51.     Although D. Wilson presented its claim for damages to Menke, they did not tender payment. Accordingly, all conditions precedent have been performed or have occurred.

52.     D. Wilson is entitled to an award of its reasonable and necessary attorney's fees and expenses incurred pursuing its claims against Menke in an amount to be established at trial.

## VI.   JURY DEMAND

53.     Pursuant to Federal Rule of Civil Procedure 38 and U.S. Constitution Amend. VII, D. Wilson demands a trial by jury.

## VII.   PRAYER

PREMISES CONSIDERED, Plaintiff D. Wilson Construction Company prays that Defendant The Menke Group d/b/a Menke & Associates, Inc. and/or BSI Consultants be cited to appear and, following trial by jury, the Court enter judgment awarding D. Wilson:

a) all damages requested herein;

b) reasonable and necessary attorney's fees;

c) court costs;

d) pre-and post-judgment interest at the highest rates allowed by law; and

e) all such other and further relief to which D. Wilson may be justly entitled, both at law and in equity.

Respectfully submitted,

COKINOS | YOUNG
10999 IH 10 West, Suite 800
San Antonio, Texas 78230
Telephone: (210) 293-8700
Facsimile: (210) 293-8733

*/s/ Stephanie L. O'Rourke*
STEPHANIE O'ROURKE
State Bar Number: 15310800
sorourke@cokinoslaw.com
and
TRAVIS BROWN
State Bar Number: 24061890
S.D. of Texas Bar Number: 2951255
tbrown@cokinoslaw.com
105 Decker Court, Suite 800
Irving, Texas 75062
Telephone: (817) 635-3600
Facsimile: (713) 635-3633

**ATTORNEYS FOR PLAINTIFF
D. WILSON CONSTRUCTION
COMPANY**